| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY a/s/o LA CIMA RESTAURANTS, LLC & TP-JACKSONVILLE, LLC<br><br>Plaintiff,<br><br>v.<br><br>TRANE INC.; TRANE U.S. INC.; EMERSON ELECTRIC CO.; and WHITE-RODGERS, a DIVISION OF EMERSON ELECTRIC CO.<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:  **COMPLAINT**<br>: **(JURY TRIAL DEMANDED)**<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiff, The Cincinnati Insurance Company as subrogee of La Cima Restaurants, LLC and TP-Jacksonville, LLC, by and through its undersigned attorneys, states by way of Complaint against Defendants, Trane Inc., Trane U.S. Inc., Emerson Electric Co., and White-Rodgers, a Division of Emerson Electric Co.:

## PARTIES

1. Plaintiff, The Cincinnati Insurance Company (hereinafter "Cincinnati"), is a corporation duly organized and existing under the laws of the State of Ohio with its principal place of business located at 6200 S. Gilmore Road, Fairfield, Ohio 45014 and at all times relevant hereto was in the business of issuing property insurance policies.

2. At all times relevant hereto, Cincinnati was duly authorized to transact business and issue insurance policies in the State of North Carolina.

1

3. Defendant, Trane Inc., is a foreign corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1 Centennial Avenue, Suite 101, Piscataway, New Jersey 08854.

4. Defendant, Trane U.S. Inc., is a foreign corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1 Centennial Avenue, Suite 101, Piscataway, New Jersey 08854. Defendants, Trane Inc. and Trane U.S. Inc., will collectively be referred to as "the Trane Defendants."

5. Defendant, Emerson Electric Co., is a foreign company organized and existing under the laws of the State of Missouri with its principal place of business located at 8000 West Florissant Avenue, Saint Louis, Missouri 63130.

6. Defendant, White-Rodgers, a division of Emerson Electric Co., is a foreign company organized and existing under the laws of the State of Missouri with its principal place of business located at 8100 West Florissant Avenue, Saint Louis, Missouri 63136. Defendants, Emerson Electric Co. and White-Rodgers, a division of Emerson Electric Co., will collectively be referred to as "the White-Rodgers Defendants."

## **JURISDICTION**

7. Plaintiff, Cincinnati, and Defendants, Trane Inc., Trane U.S. Inc., Emerson Electric Co., and White-Rodgers, a division of Emerson Electric Co., are citizens of different states. As such, diversity exists between Plaintiff and Defendants.

8. The amount in controversy in this matter exceeds $75,000.00 exclusive of interest and costs.

9. Accordingly, the United States District Court has jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

## VENUE

10. Pursuant to 28 U.S.C.A. § 1391, venue is proper in the United States District Court for the Eastern District of North Carolina because it is the judicial district within which a substantial part of the events giving rise to Plaintiff's claim occurred, which is 302 Western Boulevard, Jacksonville, North Carolina 28546.

## FACTUAL BACKGROUND

11. At all times relevant hereto, Cincinnati's insureds, La Cima Restaurants, LLC and TP-Jacksonville, LLC (hereinafter "Plaintiff's Insureds"), operated Twin Peaks Restaurant located at 302 Western Boulevard, Jacksonville, North Carolina 28546 (hereinafter "the Property").

12. At all times relevant hereto, Cincinnati's insured, TP-Jacksonville, LLC leased the Property from Mary B. Morgan and W.K. Morgan.

13. At all times relevant hereto, Cincinnati issued a policy of insurance under Policy No. CPP1097763 (hereinafter "the Policy") to La Cima Restaurants, LLC and TP-Jacksonville, LLC. Said policy covered the real and business personal property of La Cima Restaurants, LLC and TP-Jacksonville, LLC and insured against other losses.

14. At all times relevant hereto, the Trane Defendants were and are entities engaged in the business of assembling, designing, fabricating, distributing, manufacturing, marketing, servicing, inspecting, installing, selling, maintaining, warranting and placing into the stream of commerce heating, ventilating, and air conditioning ("HVAC") systems and/or its component parts.

15. Upon information and belief and at all times relevant hereto, the White-Rodgers Defendants were and are entities engaged in the business of assembling, designing, fabricating,

3

distributing, manufacturing, marketing, servicing, selling, inspecting, installing, maintaining, warranting and/or placing into the stream of commerce circuit boards and/or other HVAC-related component parts. Upon information and belief, said circuit boards and other HVAC-related component parts were incorporated into the HVAC units of the Trane Defendants.

16. At all times relevant hereto, the Trane Defendants knew and intended that its HVAC units would be used by members of the general public and knew of the specific uses, purposes and requirements for which its HVAC units would be utilized.

17. By placing said HVAC units on the market for sale, the Trane Defendants represented that the HVAC units would safely operate and perform the uses for which they were intended and that, in all respects, the HVAC units were of merchantable quality.

18. Prior to September 3, 2017, Plaintiff's Insureds purchased an HVAC unit which was subsequently installed at the Property (hereinafter "the subject HVAC unit").

19. Prior to September 3, 2017, the Trane Defendants designed, fabricated, manufactured, assembled, distributed, tested, inspected, sold and otherwise placed in the stream of commerce the subject HVAC unit located at the Property.

20. Upon information and belief, prior to September 3, 2017, the White-Rodger Defendants designed, fabricated, manufactured, assembled, distributed, tested, inspected, sold and/or installed the circuit board, model number 50A65-475-08, and/or other component parts incorporated within the subject HVAC unit located at the Property.

21. On or about September 3, 2017, a fire erupted at the Property, which originated at the subject HVAC unit and/or its related component parts (hereinafter "the Fire Loss").

22. The Fire Loss resulted from a defect in the subject HVAC unit and its component parts.

4

23. The subject HVAC unit and/or its component parts were defective at the time the HVAC unit was sold to Plaintiff's Insureds.

24. The subject HVAC unit and/or its component parts were not subject to any form of misuse, alteration, abnormal use or wear and were in substantially the same condition on September 3, 2017 as they were on the date of purchase.

25. Defendants placed the subject HVAC unit into the stream of commerce in a defective condition unreasonably dangerous to Plaintiff's Insureds.

26. The Fire Loss was caused by the negligent and careless acts and/or omissions of Defendants in their assembling, designing, fabricating, distributing, manufacturing, marketing, servicing, inspecting, installing, maintaining, and/or warranting the subject HVAC unit and its related component parts.

27. As a direct and proximate result of the Fire Loss, Plaintiff's Insureds suffered significant damages to their real and business personal property and sustained certain other losses in an amount in excess of $75,000.00.

28. In accordance with the terms and conditions of the Policy, Plaintiff was required to and did make payments to its insureds or on behalf of its insureds in an amount in excess of $75,000.00 for damages sustained as a result of the Fire Loss.

29. By virtue of Plaintiff's payments made to its insureds, Plaintiff is now subrogated to the extent of said payments to the rights of recovery that Plaintiff's Insureds possessed against Defendants.

### COUNT I– NEGLIGENCE
### Plaintiff v. All Defendants

30. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 29 of this Complaint as if fully set forth herein at length.

31. Defendants owed a duty to Plaintiff's Insureds to properly manufacture, design, fabricate, assemble, test, inspect, distribute, sell and/or install the subject HVAC unit and/or its related component parts in a careful, professional and non-negligent manner.

32. Defendants owed a duty to Plaintiff's Insureds to properly manufacture, design, fabricate, assemble, test, inspect, distribute, sell and/or install the subject HVAC unit and/or its related component parts in a manner which would not create a dangerous condition and/or increase the risk of harm to the Property.

33. Defendants owed a duty to Plaintiff's Insureds to hire competent employees, agents, representatives, contractors and/or subcontractors to manufacture, design, fabricate, assemble, test, inspect, distribute, sell and/or install the subject HVAC unit and/or its related component parts.

34. Defendants owed a duty to Plaintiff's Insureds to manufacture and/or design the subject HVAC unit and/or its related component parts in a manner that safeguarded the general public from the risk of fire as a result of the sudden and catastrophic failure of the subject HVAC unit and/or its related component parts.

35. Defendants owed a duty to Plaintiff's Insureds to exercise reasonable and/or due care under the circumstances then and there existing.

36. Defendants carelessly and negligently breached all the above-described duties by:
    a. Failing to properly and safely design, fabricate, manufacture, assemble, test, inspect, distribute and/or sell an HVAC unit and all of its related component parts that Defendants knew or reasonably should have known would subject Plaintiff's Insureds and its property to an unreasonable risk of harm;

6

Case 7:20-cv-00068-BM  Document 1  Filed 04/09/20  Page 6 of 13

b. Failing to exercise reasonable care to protect Plaintiff's Insureds' property from being damaged by the subject HVAC unit and all of its related component parts;

c. Failing to design, fabricate, manufacture, assemble, test, inspect, distribute, and/or sell an HVAC unit and all of its related component parts that was safe for all reasonably foreseeable uses;

d. Manufacturing, designing, fabricating, assembling, inspecting, testing, selling and/or distributing an HVAC unit and all of its related component parts that Defendants knew or reasonably should have known subjected Plaintiff's Insureds and its property to an unreasonable risk of fire;

e. Failing to provide adequate warnings and instructions regarding the risk of fire and possible resultant damage to real and personal property;

f. Failing to comply with applicable local, state and federal statutes, codes, regulations and generally recognized safety practices and standards;

g. Failing to comply with industry standards and guidelines;

h. Failing to test and/or inspect the subject HVAC unit and all of its related component parts to determine whether they could be used without posing a risk of injury to life and/or to property;

i. Failing to incorporate an alternative and safer design and/or other guards or devices to minimize the risk of failure and/or injury during the operation of the product;

j. Failing to warn users about the defective condition of the subject HVAC unit and its related component parts;

  k. Negligently and carelessly designing, fabricating, manufacturing, distributing, assembling, supplying and/or selling the subject HVAC unit without adequate instructions, warnings, safeguards and/or protective devices;

  l. Putting on the market a product, which Defendants knew, or reasonably should have known, was defective in design and would cause injury to the ultimate user of same; and

  m. Otherwise failing to use due care, as to be disclosed during the course of discovery.

37. The aforementioned defects and/or defective conditions existed at the time the subject HVAC unit and/or its related component parts left the possession and/or control of Defendants.

38. The Fire Loss and resultant damages occurred as a direct and proximate result of Defendants' careless and negligent conduct, acts and/or omissions as averred above.

39. As a result of the Fire Loss and resultant damage, Plaintiff's Insureds suffered damages to the their real and business personal property and sustained certain other losses in an amount in excess of $75,000.00.

40. As a result of Defendants' negligence and the resulting Fire Loss, and pursuant to the terms and conditions of the Policy, Cincinnati made payments to or on behalf of its insureds in an amount in excess of $75,000.00.

41. By virtue of the payments made to its insureds and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is legally, equitably, and contractually subrogated to the rights of its insureds with regard to all claims against Defendants.

## COUNT II- PRODUCTS LIABILITY N.C. GEN. STAT. § 99B
### Plaintiff v. All Defendants

42. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 41 of this Complaint as if fully set forth herein at length.

43. Defendants designed, fabricated, manufactured, assembled, installed, distributed, sold and otherwise placed in the stream of commerce the subject HVAC unit and its component parts which is the subject of this lawsuit.

44. The North Carolina Product Liability Act (hereinafter "the Act"), N.C. Gen. Stat. § 99B, defines a "manufacturer" as "a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a user or consumer, including a seller owned in whole or significant part by the manufacturer or a seller owning the manufacturer in whole or significant part."

45. The Trane Defendants and the White-Rodgers Defendants are manufacturers of the subject HVAC unit and/or its component parts as defined by N.C. Gen. Stat. § 99B.

46. Under the Act, Defendants, as manufacturers of the subject HVAC unit and its component parts, owed a duty to Plaintiff's Insureds to design, assemble, fabricate, produce and/or manufacture a product that was reasonably safe in design and formulation at the time the product was manufactured and left the control of Defendants.

47. Under the Act, Defendants, as manufacturers of the subject HVAC unit and its component parts, owed a duty to Plaintiff's Insureds to act reasonably in providing adequate warnings or instructions.

48. The subject HVAC unit was unreasonably dangerous and defective in that it created an unreasonable risk of serious harm to the intended users and/or operators.

9

Case 7:20-cv-00068-BM    Document 1    Filed 04/09/20    Page 9 of 13

49. Defendants breached their duties to Plaintiff's Insureds by failing to properly manufacture, design, fabricate, assemble, test, inspect, distribute, sell and/or install the subject HVAC unit and/or its related component parts in a manner which would not create a dangerous condition and/or increase the risk of harm to the Property.

50. Defendants breached their duties to Plaintiff's Insureds by unreasonably failing to adopt a safer, practical, feasible and otherwise reasonable alternative design or formulation which would have prevented or substantially reduced the risk of harm to Plaintiff's Insureds, without substantially impairing the usefulness, practicality or desirability of the subject HVAC unit.

51. Defendants breached their duties to Plaintiff's Insureds by failing to provide adequate warnings or instructions which created an unreasonably dangerous condition that Defendants knew, or should have known in the exercise of ordinary care, posed a substantial risk of harm to its' consumers.

52. Since the subject HVAC unit and/or its components parts manufactured, fabricated, designed, and/or assembled by Defendants was not reasonably safe in design or formulation, Defendants breached their duties to Plaintiff's Insureds and are liable to Plaintiff for the injury and other damages proximately caused by their manufacture and distribution of an unreasonably safe product.

53. As a direct and proximate result of the defective condition of the subject HVAC unit and its component parts, Plaintiff's Insureds suffered damages to the their real and business personal property and sustained certain other losses in an amount in excess of $75,000.00.

54. As a result of the Fire Loss and resultant damages, and pursuant to the terms and conditions of the Policy, Cincinnati made payments to or on behalf of its insureds in an amount in excess of $75,000.00.

55. By virtue of the payments made to its insureds and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is legally, equitably, and contractually subrogated to the rights of its insureds with regard to all claims against Defendants.

**COUNT III – BREACH OF EXPRESS WARRANTY, IMPLIED WARRANTY OF MERCHANTABILITY & IMPLIED WARRANTY OF FITNESS FOR PARTIUCLAR PURPOSE**
**Plaintiff v. All Defendants**

56. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 55 of this Complaint as if fully set forth herein at length.

57. Defendants expressly and/or impliedly warranted that the subject HVAC unit and its component parts were of merchantable quality, free from defects, constructed of adequate and sufficient material, and properly designed so as to be fit for the purpose for which they were intended.

58. Defendants breached their express and/or implied warranties by:

   a. Manufacturing, designing, fabricating, testing, inspecting, distributing, assembling, selling and/or installing the defective HVAC unit and/or its related components parts;

   b. Manufacturing, designing, fabricating, testing, inspecting, distributing, assembling, selling and/or installing the defective HVAC unit and/or its related component parts which were not of merchantable quality;

   c. Manufacturing, designing, fabricating, testing, inspecting, distributing, assembling, selling and/or installing the subject HVAC unit and/or its related

        component parts which were not fit for the ordinary purposes for which they were designed and used; and

    d. Failing to ensure that the subject HVAC unit and/or its related component parts were free from any and all defects before said product left Defendants' possession, custody and/or control.

59. The above-described breaches by Defendants constituted the cause in fact and the direct and proximate cause of the Fire Loss and the resultant damages.

60. Defendants received timely notice of the above-described breaches which were the direct and proximate cause of the Fire Loss and resultant damages.

61. As a direct and proximate result of the Fire Loss, Plaintiff's Insureds, sustained damages to their real and business personal property and certain other losses in an amount in excess of $75,000.00.

62. As a result of the Fire Loss, Plaintiff has made payments to or on behalf of its insureds in an amount in excess of $75,000.00, in accordance with the terms and conditions of the Policy.

63. By virtue of the payments made to its insureds and pursuant to the terms and conditions of the Policy, Plaintiff, Cincinnati, is legally, equitably, and contractually subrogated to the rights of its insureds with regard to all claims against Defendants.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, The Cincinnati Insurance Company as subrogee of La Cima Restaurants, LLC and TP-Jacksonville, LLC, prays for judgement against the Defendants as follows:

1). That Plaintiff have and recover damages from Trane Inc., Trane U.S. Inc., Emerson Electric Co. and White-Rodgers, a Division of Emerson Electric Co., individually, jointly, and severally, in an amount to be determined at trial for their negligence and breach of express warranty, implied warranty of merchantability, and implied warranty of fitness;

2). That Plaintiff have and recover damages from Trane Inc., Trane U.S. Inc., Emerson Electric Co. and White-Rodgers, a Division of Emerson Electric Co., individually, jointly, and severally, in an amount to be determined at trial for product liability pursuant to N.C. Gen. Stat. § 99B.

3). That Defendants be taxed with the costs of this action, including reasonable attorney fees as allowed by law, expenses, prejudgment interest, etc.;

4) That all issues so triable, be tried to a jury; and

5). For any other relief this Court deems just and proper under the circumstances.

Respectfully submitted this the 9th day of April 2020.

**DeVORE, ACTON & STAFFORD, P.A.**

/s/F. William DeVore, IV
F. William DeVore, IV, N.C. State Bar No. 39633
wdevore@devact.com
438 Queens Road
Charlotte, NC  28207
Telephone: (704) 377-5242
Facsimile: (704) 332-2825
*Attorney for Plaintiff*

**Stutman Law**
Michael Wallace
20 East Taunton Road, Suite 403
Berlin, New Jersey 08009
Phone: 856-767-6800
Email: wallacem@StutmanLaw.com
*To be admitted pro hac vice*